STEPHEN R. HARRIS, ESQ.
**Nevada Bar No. 001463**
CHRIS D. NICHOLS, ESQ.
**Nevada Bar No. 003123**
BELDING, HARRIS & PETRONI, LTD.
417 West Plumb Lane
Reno, Nevada 89509
Telephone: (775) 786-7600
Facsimile: (775) 786-7764

Proposed Attorneys for Debtor

ELECTRONICALLY FILED BY
BELDING, HARRIS & PETRONI LTD.
ON _____ 6/17/10

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

* * * * *

IN RE:

ARVCO CAPITAL RESEARCH, LLC
a Nevada limited liability company,

Debtor.
_____/

Case No. 10-52249
(Chapter 11)

**APPLICATION FOR ORDER AUTHORIZING DEBTOR TO EMPLOY ATTORNEY (11 U.S.C. §327(a)) COOLEY LLP AND TO ENTER INTO MONTHLY BILLING ARRANGEMENT UNDER 11 U.S.C. §§105(a) AND 331**

Hrg. DATE:  June 23, 2010
Hrg. TIME:  2:30 p.m.
Est Time:   5 minutes
Set by:     Judge Zive

*TO: The Honorable Gregg W. Zive, United States Bankruptcy Judge*

COMES NOW ARVCO CAPITAL RESEARCH, LLC, a Nevada limited liability company, Debtor and Debtor-In-Possession herein ("Debtor"), by and through its attorney of record, STEPHEN R. HARRIS, ESQ., and CHRIS D. NICHOLS, ESQ., of BELDING, HARRIS & PETRONI, LTD., and files its APPLICATION FOR ORDER AUTHORIZING DEBTOR TO EMPLOY ATTORNEY (11 U.S.C. §327(a)) COOLEY LLP AND TO ENTER INTO

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

1642386 v4/NY                              1

MONTHLY BILLING ARRANGEMENT UNDER 11 U.S.C. §§105(a) AND 331, and alleges as follows:

1.  A Voluntary Petition for Relief under Chapter 11 of the United States Bankruptcy Code was filed by the Debtor on June 9, 2010 (the "Petition Date"). The Debtor's primary business is that of investment banking.

2.  STEPHEN R. HARRIS, ESQ., and his law firm BELDING, HARRIS & PETRONI, LTD., have applied for appointment as pending general bankruptcy counsel for the Debtor.

3.  Debtor continues to conduct its business in a Debtor-In-Possession status.

## PROPOSED SERVICES

4.  Due to Debtor's complex financial matters, Debtor has retained Cooley LLP as co-counsel to (i) represent it in its Chapter 11 proceeding, as well as to represent it and three other related debtors (collectively, the "Debtors") for which joint administration will be sought, and (ii) to represent it in connection with issues arising in certain litigation entitled <u>The People of the State of California vs. Alfred J.R. Villalobos, Arvco Capital Research, LLC, Federico R. Buenrostro Jr.</u>, Case No. SC107850, in the Superior Court of the State of California, County of Los Angeles, West District, whether such issues are litigated in the California state court, this court or another forum ("California Litigation"), subject to the terms of that certain Engagement Agreement between the Debtors and Cooley LLP dated as of June 10, 2010 (the "Engagement Letter"). Accordingly, Debtor seeks the appointment of legal counsel in connection with the matters stated hereinabove.

5.  Pursuant to the provisions contained in 11 U.S.C. Sections 327(a) and 1107(b), the Debtor hereby applies to the Court to appoint COOLEY LLP, to act as counsel to represent the Debtor's interests, as more specifically set forth in Paragraph 4 above, and subject to the terms of the Engagement Letter. The appointment of COOLEY LLP, to represent the Debtor in this case

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

1642386 v4/NY

2

and in the California Litigation is in Debtor's best interests and would be the most efficient manner of proceeding for the bankrupt estate.

## PROPOSED COMPENSATION

6. The consideration agreed to be paid to COOLEY LLP, subject to the approval of the United States Bankruptcy Court, is to employ the attorneys under a general retainer based on time and standard billable charges in effect on the date services are provided. COOLEY LLP shall be paid for its normal actual time charges and disbursements. The Debtor has agreed that LAWRENCE C. GOTTLIEB, ESQ., and all members of COOLEY LLP who subsequently are admitted to practice in this case, shall be compensated for services at their current standard hourly rates. The professional time of attorneys and legal assistants will be taken into account at scheduled hourly rates based on the nature of the matter, years of experience, specialization, and level of professional attainment of attorneys and legal assistants assigned to the various matters. The present hourly rate for LAWRENCE C. GOTTLIEB, ESQ., is $910.00 per hour. The Engagement Letter is attached hereto as **Exhibit "A"** and incorporated herein by reference. The fees also include charges for reasonable and necessary third-party and staff services employed in the course of the representation, such as long distance telephone calls, postage, messenger service, photocopying, filing fees, travel, and computerized legal research. These are separately itemized on COOLEY LLP's statements based on the services involved and out-of-pocket disbursements incurred. These are the customary rates charged by said law firm. Finally, this basis of compensation is authorized pursuant to Sections 328(a) and 331 of the Bankruptcy Code.

7. A general retainer is necessary because of the extensive legal services required for this estate. Accordingly, Debtor has agreed to pay the law firm of COOLEY LLP the sum of Two Hundred Fifty Thousand Dollars ($250,000.00) (the "Retainer") to represent it and three other related Debtor entities, namely ALFRED J.R. VILLALOBOS, ARVCO FINANCIAL

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

1642386 v4/NY

3

VENTURES, LLC, and ARVCO ART, INC. Among other things, and without limiting any other terms of the Engagement Letter, the Engagement Letter provides that receipt by COOLEY LLP of the Retainer as a condition to COOLEY LLP's performing services on behalf of the Debtors. COOLEY LLP shall be paid for its actual time charges and disbursements, subject to approval by the Court. Debtor has agreed that COOLEY LLP shall be compensated for services at the following rates: Lawrence C. Gottlieb, Esq. $910.00 per hour; Richelle Kalnit, Esq., $500.00 per hour; and others members and professional staff of COOLEY LLP range from $105.00 to $1,050.00 per hour. These hourly rates are subject to annual adjustments to reflect economic and other conditions, and on occasion, to reflect each attorney's or paraprofessional's increased experience and expertise in the areas of general law and securities law. This basis of compensation is expressly authorized pursuant to Sections 328(a) and 331 of the Bankruptcy Code.

**DISINTERESTEDNESS**

8. COOLEY LLP, has indicated its willingness to act on behalf of the Debtor. To the best of Debtor's knowledge, LAWRENCE C. GOTTLIEB, ESQ., and his law firm COOLEY LLP, do not have any connection with the Debtor/or other attorneys or accountants, which would or could affect the scope of retention agreed upon hereon, and no connection to any person in the office of the United States Trustee, and represents no interest adverse to the estate in matters upon which he is to be retained, except for the fact that LAWRENCE C. GOTTLIEB, ESQ. and COOLEY LLP is also representing three other related debtors in related Chapter 11 proceedings for which joint administration will be sought. Based on the education and prior legal experience of LAWRENCE C. GOTTLIEB, ESQ., and members of his law firm COOLEY LLP, the Debtor believes employment of COOLEY LLP is in the best interests of the estate and that their experience will save the estate considerable expense.

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

1642386 v4/NY                4

9. To the best of the Debtor's knowledge, and except as otherwise set forth herein and in the accompanying affidavit of Lawrence C. Gottlieb (the "Gottlieb Affidavit"), the members, counsel and associates of COOLEY LLP (a) do not have any connection with the Debtor or its affiliates, its creditors or any other party in interest, or their respective attorneys and accountants, the U.S. Trustee or any person employed in the office of the same, or any judge in the Bankruptcy Court or the United States District Court for the District of Nevada or any person employed in the offices of the same; (b) are "disinterested persons," as that term is defined in Bankruptcy Code section 101(14); and (c) do not hold or represent any interest adverse to the estate.

10. To the best of the Debtor's knowledge and except as set forth in the Gottlieb Affidavit:

(a) Neither COOLEY LLP nor any attorney at COOLEY LLP holds or represents an interest adverse to the Debtor's estate.

(b) Neither COOLEY LLP nor any attorney at COOLEY LLP is or was a creditor or an insider of the Debtor, except that Cooley previously has rendered legal services to the Debtor as disclosed above.

(c) Neither COOLEY LLP nor any attorney at COOLEY LLP is or was, within two years before the Petition Date, a director, officer, or employee of the Debtor.

(d) COOLEY LLP does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtor, or for any other reason.

(e) No attorney at COOLEY LLP is related to any United States District Judge or United States Bankruptcy Judge for the Southern District of New York or to the U.S. Trustee for such district or to any known employee in the office thereof.

11. In view of the foregoing, the Debtor believes that Cooley is a "disinterested person" within the meaning of Bankruptcy Code section 101(14), as modified by Bankruptcy Code section 1107(b).

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

1642386 v4/NY

5

**PROPOSED INTERIM COMPENSATION PROCEDURES**

12.     The Debtor is also seeking the establishment of procedures for compensating and reimbursing the Debtor's attorneys on a monthly basis in order to permit the Court and other parties to more effectively monitor the professional fees incurred in this Chapter 11 case (the "Interim Compensation Procedures"). The requested procedures would permit LAWRENCE C. GOTTLIEB, ESQ., and his law firm COOLEY LLP, to file with the Court an application (the "Fee Notice") for interim approval and allowance of compensation for services rendered and expenses incurred by COOLEY LLP during the immediately preceding month (the "Compensation Period") and to serve such Fee Notice on the Debtor, the United States Trustee, counsel to the Debtor's pre-petition and post-petition secured lenders (the "Lenders"), and counsel to any statutory committee(s) appointed by the United States Trustee (collectively, the "Committee(s)"). The Debtor proposes that the monthly payment of compensation and reimbursement of expenses of COOLEY LLP be structured as follows:

(a)     On or before the 20th day of each month following the month for which compensation is sought (the "Monthly Fee Notice Date"), COOLEY LLP will file with the Court a Monthly Fee Notice and serve the Fee Notice on the following parties (collectively, the "Notice Parties"): (I) Debtor; (ii) counsel for the pre-petition and post-petition Lenders; (iii) counsel to the Committee(s); and (iv) the United States Trustee, 300 Booth Street, Suite 2129, Reno, Nevada 89509, Attn: Nicholas A. Strozza, Esq.

(b)     Each Notice Party will have ten (10) days after service of a Fee Notice to object thereto (the "Objection Deadline"). Upon the expiration of the Objection Deadline, the Debtor is authorized to pay COOLEY LLP an amount equal to eighty percent (80%) of the fees and one hundred percent (100%) of the expenses requested in the Fee Notice (the "Maximum Interim Payment"). If an objection is property filed pursuant to subparagraph

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

1642386 v4/NY

6

(c) below, the Debtor shall be authorized to pay COOLEY LLP eighty percent (80%) of the fees and one hundred percent (100%) of the expenses not subject to an objection (the "Actual Interim Payment").

(c)   If any Notice Party objects to COOLEY LLP's Fee Notice, it must file with the Court and serve on COOLEY LLP and each of the Notice Parties a written objection, which must be filed with the Court and received by COOLEY LLP and the Notice Parties on or before the Objection Deadline. Thereafter, the objecting party and COOLEY LLP may attempt to resolve the Objection on a consensual basis. If the parties are unable to reach a resolution of the Objection within twenty (20) days after service of the Objection, COOLEY LLP may either: (I) file the Objection with the Court, together with a request for payment of the difference, if any, between the Maximum Interim Payment and the Actual Interim Payment made to COOLEY LLP (the "Incremental Amount"); or (ii) forego payment of the Incremental Amount until the next interim or final fee application hearing, at which time the Court will consider and dispose of the Objection if requested by the parties.

13.   Beginning with period ending October 31, 2010, and at subsequent four-month intervals or at such other intervals convenient to the Court, COOLEY LLP must file with the Court and serve on the Notice Parties a request (an "Interim Fee Application Request") for interim Court approval and allowance, pursuant to §331 of the Bankruptcy Code, of the compensation and reimbursement of expenses sought in the Fee Notices filed during such period (the "Interim Fee Period"). The Interim Fee Application Request must include a summary of the Fee Notices that are the subject of the request and any other information requested by the Court or required by the Local Rules. COOLEY LLP must file its Interim Fee Application Request within forty-five (45) days after the end of the Interim Fee Period for which the request seeks allowance of fees and reimbursement of expenses. COOLEY LLP must file its first Interim Fee Application Request on

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

1642386 v4/NY              7

or before December 15, 2010, and the first Interim Fee Application Request should cover the Interim Fee Period from the Filing Date through and including October 31, 2010. If COOLEY LLP fails to file an Interim Fee Application Request when due, it will be ineligible to receive further interim payments of fees or expenses under the Interim Compensation Procedures until such time as a further Interim Fee Application Request is submitted by COOLEY LLP.

14. The Debtor shall request that the Court schedule a hearing on the Interim Fee Application Request(s) at least once every four months, or at such other intervals as the Court deems appropriate. Upon allowance by the Court of COOLEY LLP's Interim Fee Application Request, the Debtor shall be authorized to promptly pay COOLEY LLP the difference, if any, between the allowed amount of fees and expenses approved by the Court and the Actual Interim Payments received.

15. The pendency of an Objection to payment of compensation or reimbursement of expenses will not disqualify COOLEY LLP from the future payment of compensation or reimbursement of expenses under the Revised Compensation Procedures. Neither (I) the payment of or the failure to pay, in whole or in part, monthly interim compensation and reimbursement of expenses under the Revised Compensation Procedures nor (ii) the filing of or failure to file an Objection will bind any party in interest or the Court with respect to the allowance of interim or final applications for compensation and reimbursement of expenses of COOLEY LLP. All fees and expenses paid to COOLEY LLP under these compensation procedures are subject to disgorgement until final allowance by the Court.

16. 11 U.S.C. §331 of the Bankruptcy Court provides, in part as follows:

> A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title...

11 U.S.C. §105(a) provides in part as follows:

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

1642386 v4/NY

8

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title...shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules...

17. Courts in this district and elsewhere have approved similar procedures for compensating and reimbursing court-approved professionals in other large Chapter 11 cases. See In re Washington Group International, Case No. 00-31627 (GWZ) (Bankr. D. Nev. May 14, 2001; In re Fitzgeralds Gaming Corp., Case No. 00-33467 (GWZ) (Bankr. D. Nev. Feb. 12, 2001); In re ICG Communications, Case No. 00-4238 (PJW) (Bankr. D. Del. June 13, 2000). Such procedures are needed to avoid having professionals fund the reorganization case. In re International Horizons, Inc., 10 B.R. 895, 897 (Bankr. N.D. Ga. 1981) (Court established procedures for monthly interim compensations). The United States Bankruptcy Appellate Panel for the Ninth Circuit ("BAP") made clear that interim payments for professionals on a monthly basis are entirely appropriate in large cases such as the Debtor's case. United States Trustee v. Knudsen Corp. (In re Knudsen Corp.), 84 B.R. 668 (9th Cir. 1988). In Knudsen, the court held that at least in large cases, monthly payments to professionals are appropriate so long as made pursuant to a procedure that provides the opportunity for review by the Court. Knudsen, 84 F.R. at 671-72.

18. In re California Consortium, 135 B.R. 120, 123 (Bankr. C.D. Cal. 1991) the court held that "the essential purpose of this action is to relieve counsel and other professionals of the burden of financing lengthy proceedings." The interim fee procedure outlined in this Motion alleviates the financial burden on the Debtor's general bankruptcy attorneys, complies with requirements of §331 and accords the procedure that the BAP found "would undoubtedly be appropriate." Knudsen, 84 B.R. at 527.

**WHEREFORE,** Debtor requests the entry of an order: 1) authorizing it to employ and retain LAWRENCE C. GOTTLIEB, ESQ., and his law firm COOLEY LLP, as the Debtor's attorney, pursuant to the terms and conditions recited above, to represent it in this Chapter 11 case; 2) authorizing it to pay the law firm of COOLEY LLP on a monthly basis according to the terms

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

1642386 v4/NY

9

and conditions set forth hereinabove; and 3) for such other and further relief as the Court deems just under the circumstances.

DATED this 17th day of June, 2010.

STEPHEN R. HARRIS, ESQ.
CHRIS D. NICHOLS, ESQ.
BELDING, HARRIS & PETRONI, LTD.
417 W. Plumb Lane
Reno, NV 89509

_____
PROPOSED ATTORNEYS FOR DEBTOR

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

1642386 v4/NY

10

## VERIFICATION

I, ALFRED J.R. VILLALOBOS, Managing Member of the Debtor ARVCO CAPITAL RESEARCH, LLC, a Nevada limited liability company, declare under penalty of perjury that I have read the foregoing APPLICATION FOR ORDER AUTHORIZING DEBTOR TO EMPLOY ATTORNEY (11 U.S.C. §327(a)) COOLEY LLP AND TO ENTER INTO MONTHLY BILLING ARANGEMENT UNDER 11 U.S.C. §§105(a) AND 331, and that the contents contained therein are true and correct to the best of my knowledge, information and belief.

DATED this _____ day of June, 2010.

_____
ALFRED J.R. VILLALOBOS, Managing Member
ARVCO CAPITAL RESEARCH, LLC

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

1642386 v4/NY

# EXHIBIT "A"

# EXHIBIT "A"



June 10, 2010

Mr. Alfred J.R. Villalobos
1000 Holly Lane
Zephyr Cove, Nevada 89448

RE: **Engagement Agreement**

Dear A.J.:

We are pleased that we have been engaged to assist you, Arvco Financial Ventures, LLC, Arvco Art, Inc. and Arvco Capital Research, LLC (collectively, the "Debtors") in connection with the Debtors' bankruptcy cases filed under 11 U.S.C § 101 et seq. (the "Bankruptcy Cases"). The enclosed Memorandum, incorporated by reference herein (collectively, the "Engagement Agreement"), sets forth our practices and policies on fees, billing, collection, conflicts and other material terms of our engagement. The Debtors agree to provide us immediately with a $250,000.00 retainer against our monthly statements related to the services that the Debtors ask us to perform under this engagement letter (including future services). For the avoidance of doubt, our receipt of the retainer is a condition to our performing services on behalf of the Debtors. To the extent our statements do not exceed $250,000.00, we will refund the balance to the Debtors. To the extent our final statements exceed $250,000.00, the Debtors agree to pay the balance.

Should the Debtors request and we agree that additional services will be performed by us in this or other matters, then the terms of this Engagement Agreement will govern those additional services unless we agree in writing on different terms.

I will have primary initial responsibility for the Debtors' representation in connection with the Bankruptcy Cases and will utilize other attorneys and paralegals in the firm in the best exercise of my professional judgment. I anticipate that initially Richelle Kalnit will be the primary attorneys working with me for the Debtors on matters related to the Bankruptcy Cases. If at any time there are questions, concerns or criticisms, please contact me at once.

If the terms of our Engagement Agreement are acceptable, please indicate your agreement by arranging for a copy of this letter to be signed and returned to us, retaining this letter for the Debtors' records. Facsimile and electronic signatures are as effective as original signatures. If there are any questions about our Engagement Agreement, please call me. We look forward to working with the Debtors and hope this marks the continuation of a long and mutually satisfying relationship.

Cooley
LLP

Very truly yours,

Cooley LLP

*[signature]*
By: Lawrence C. Gottlieb

ACCEPTED AND AGREED:

Dated: _____

ALFRED J.R. VILLALOBOS
*[signature]*
By: Alfred J.R. Villalobos

ARVCO FINANCIAL VENTURES, LLC
*[signature]*
By: Alfred J.R. Villalobos
Title: Managing Member

ARVCO ART, INC.
*[signature]*
By: Alfred J.R. Villalobos
Title: President

ARVCO CAPITAL RESEARCH, LLC
*[signature]*
By: Alfred J.R. Villalobos
Title: Managing Member

COOLEY LLP

TERMS OF ENGAGEMENT

Dated: June 10, 2010

This Memorandum describes the terms on which our firm will provide and bill for our legal services to Alfred J.R. Villalobos, Arvco Financial Ventures, LLC, Arvco Art, Inc. and Arvco Capital Research, LLC (collectively, the "Debtors"):

1.  **Scope.** We agree to provide the Debtors with legal services, as requested by the Debtors from time to time, which in our professional judgment are reasonably necessary and appropriate in connection with our engagement as described in the letter accompanying this Memorandum. At this time, our engagement is limited to the matters described in the letter, though we would be pleased to consider representing the Debtors in other matters as the Debtors may request. The terms and conditions of our engagement in any other matter will be those set forth in the accompanying letter and this Memorandum (collectively, our "Engagement Agreement"), unless the Debtors and our firm otherwise agree in writing. In all matters in which we represent the Debtors, we will provide services of a strictly legal nature. It is understood that the Debtors will not be relying on us for business, investment, or accounting advice, nor to assess the character or creditworthiness of persons with whom the Debtors may deal.

2.  **Fees.** Our objective is to obtain the results the Debtors desire in the most cost-effective manner possible. The hourly rates of attorneys and other members of our professional staff provide the principal basis for billing for our services. We base these rates on various factors which include years of experience, specialization in training and practice, and level of professional attainment. Currently our normal hourly rates for attorneys and other members of our professional staff range from $105 to $1,050. My current rate is $910. The current rate for Richelle Kalnit is $500. We review and adjust the schedule of rates from time to time. In addition, in connection with certain forms of legal work in which a particularly high degree of expertise is required, our rates for such specialized services may exceed our normal hourly rates. The Debtors will be responsible for the rates in effect at the times that services are performed.

3.  **Costs and Disbursements.** Often it is necessary for us to pay for items such as travel, lodging, meals, and deposition transcripts. Similarly, some matters require substantial amounts of ancillary services such as photocopying, word processing, messengers, overnight mail, postage, telephone calls, facsimile, desktop publishing, computerized legal research, electronic trademark docketing and charges for overtime for non-attorney personnel. To allocate these costs fairly and to keep billing rates as low as possible for those matters that do not involve such costs, these items are separately itemized in our statements of account as "costs and disbursements recorded." Some "costs and disbursements" represent out-of-pocket costs, some represent an allocation of overhead costs associated with the items and others represent a combination of both factors. Schedule A, attached hereto and incorporated herein, lists certain of our current standard costs and disbursements, which may change from time to

time. The Debtors will be responsible for paying the amounts in effect when they are incurred. In some circumstances, particularly with regard to substantial amounts, we will ask the Debtors either to pay costs directly or to fund them in advance.

4. **Outside Experts.** In the course of our representation it may be appropriate, with the Debtors' advance approval, to retain persons of special training or expertise to assist in our provision of legal services (*e.g.*, accountants, foreign lawyers, investigators). Because there are privileges that may apply to services that an attorney requests from a third party, it may be advisable, depending on the circumstances, for our firm to assume responsibility for hiring such experts. The Debtors will be obligated to pay the invoices for fees and expenses of such experts, whether they are retained by our firm or by the Debtors directly.

5. **Statements of Account.** Our policy is to bill each client monthly for all services performed and costs and disbursements recorded in the previous month. We will issue our statements of account from our San Francisco office. Those statements will be payable by good funds delivered to our San Francisco office. Because there are sometimes delays in the accrual of costs, we will occasionally include accrued costs in a subsequent statement. The Debtors agree to pay our statements in full on receipt. If full payment is not received within 30 days of the statement date, we will impose a late charge of 0.67% per month (8.04% annual) on the unpaid balance and reflect that charge on subsequent monthly statements of account. The purpose of the late charge is to assess on an equitable basis the added expenses incurred by our firm for overdue accounts.

As security for the payment of the fees, costs, and disbursements incurred on the Debtors' behalf, and without prejudice to any other rights, recourse or remedies we may have, the Debtors hereby grant us a security interest in and lien upon any sum(s) that may be on deposit in our client trust and/or retainer account(s) in connection with any engagement covered by our Engagement Agreement. In addition, as to any matters covered by our Engagement Agreement that involve litigation or threatened litigation, or any administrative or alternative dispute resolution proceeding, the Debtors hereby grant us a security interest and a lien upon any sum(s) that may be recovered or received by the Debtors or on the Debtors' behalf (or which the Debtors are or become entitled to recover or receive) in connection with such litigation, threatened litigation or other proceeding, from any source or for any reason, including without limitation pursuant to any judgment, arbitration decision, settlement, or insurance policy. The Debtors expressly authorize us to take appropriate actions to perfect these security interests or liens, if necessary, and to resort to such security interests or liens to obtain partial or total satisfaction of any obligation or debt that the Debtors may have to us arising from this engagement.

6. **Retainer.** A retainer is an advance payment appropriate to the size and scope of the matter that we apply toward amounts the Debtors thereafter owe us. In connection with this engagement, we require receipt of a retainer payment of $250,000.00 before we will perform any services. <u>For the avoidance of doubt, our receipt of the retainer is a condition to our performing services on behalf of the Debtors.</u> We will issue statements of account indicating amounts due for services performed and costs and disbursements recorded and expect payment monthly. The retainer will be held and applied to our statements (with any unused amount being returned to the Debtors).

7.  **Confidentiality.** For our relationship with the Debtors to succeed, it is essential for the Debtors to provide us with all factual information reasonably relevant and material to the subject matter of our engagement. A lawyer has an ethical obligation to preserve the confidences and secrets of a client. That duty is one we regard with the utmost seriousness. In instances in which we represent a corporation, partnership or other legal entity, our relationship is with, and hence this duty of confidentiality is owed to, the entity, and not to the entity's parent or subsidiary entities, or its shareholders, members, officers, directors or partners.

8.  **Reporting Obligations.** Under certain circumstances, the law may impose upon us a duty to report information to government authorities or others. For example, in the event we provide legal advice in connection with certain transactions described in the regulations under section 6011 of the Internal Revenue Code, we may have a duty to disclose information under section 6111 or 6112, or both, of the Internal Revenue Code. While these circumstances are fairly limited, and while we would make every effort to consult with the Debtors before making a required disclosure, the Debtors understand and agree that if we determine, in our sole discretion, that we have a legal duty to make a disclosure, we will do so.

9.  **Conflicts of Interest.** We wish to avoid any circumstances in which the Debtors would regard our representation of another client to be inconsistent with our duties to, and understandings with, the Debtors. Because we represent a large number of clients in a wide variety of legal matters, it is possible that we will be asked to represent a client whose interests are actually or potentially adverse to the Debtors' interests, including, without limitation, in a business licensing, financing or restructuring transaction, or in bankruptcy or insolvency proceedings or litigation. In any of these circumstances, we agree that we will not undertake any such representation if the other representation is related to a matter in which we currently represent the Debtors. If the matters are not related, however, then the Debtors agree that we will be free to undertake such an unrelated adverse representation provided that (a) the unrelated representation will not implicate any confidential information we have received from the Debtors, (b) the lawyers in our firm engaged on the other matter are screened from involvement in the Debtors' matter, and (c) the other client has consented to our continued representation of the Debtors. The Debtors' agreement set forth in the preceding sentence reflects the Debtors' acknowledgment that such adverse representations are foreseeable and waives any right the Debtors may have to object to our representation in an unrelated matter of another client whose interests are adverse to the Debtors' interests.

10. **Termination.** We sincerely hope and trust that our relationship will be a long and fruitful one. Nevertheless, the Debtors will have the right to terminate our engagement at any time. We also will have the right to terminate our engagement at any time, subject always to any applicable rule of court or administrative agency, and subject to giving the Debtors a reasonable opportunity to arrange any necessary alternative representation. If judicial or administrative approval is required for us to withdraw, the Debtors agree that it will not oppose such withdrawal. In litigation matters, the Debtors agree that as of 60 days prior to any scheduled trial or binding arbitration date, all fees and costs incurred up to that point will be paid current, and the Debtors will (1) provide us with a retainer or augment any existing retainer, or (2) make some other arrangement satisfactory to us, so as to insure payment of all fees and costs estimated to be incurred from then through the end of the trial or arbitration. In the event that the Debtors are unable or unwilling to satisfy the foregoing requirements to our satisfaction

in any litigation matter, we may apply to the court to withdraw as the Debtors' counsel in such matter, and the Debtors hereby consent to such withdrawal.

11.  **Disposition of Files.**  We have a policy to destroy client files at various times after the completion of matters.  We will make reasonable efforts to notify the Debtors in writing at least 30 days before the scheduled destruction date of any of its files.  The Debtors will then have the option to take possession of the files.  It will be the Debtors' obligation to maintain a current address with us in order to communicate with the Debtors concerning such matters.

12.  **Understandings.**  The Debtors understand that any estimate we might provide for the fees and costs associated with our engagement on a matter is only an estimate based on a number of uncertain factors, as to which information is generally incomplete and constantly changing, and that the actual fees and costs will be determined in accordance with the provisions of our Engagement Agreement and may vary significantly from the estimate.  The Debtors also understand that we cannot make and have not made any guarantees regarding the outcome of any matter.  Any discussions we have with the Debtors in this regard are limited by our knowledge at the time.  The Debtors acknowledge that they has been given a reasonable opportunity to seek the advice of independent counsel of its choice with respect to this Engagement Agreement, and that the Debtors have availed themselves of that opportunity if and to the extent the Debtors deemed it appropriate to do so.

# SCHEDULE A

## SELECTED STANDARD COSTS AND DISBURSEMENTS

| | |
|---|---|
| Messenger Service | Cost |
| Postage | Cost |
| Research Databases | Cost |
| Telephone: | |
|     Domestic | Long distance charges at AT&T's standard direct dial rate |
|     International | Long distance charges at AT&T's standard direct dial rate substantially discounted |
| Facsimile Transmission of Documents | $1.00 per page plus long distance charges at AT&T's standard direct dial rate |
| Reproduction of Documents: | |
|     Scanning, Printing, Photocopying | $.20 per page (first 500 copies)<br>$.14 per page (quantities over 500 copies) |
|     Color Photocopying and Printing | $1.00 per page |
| Word Processing | $55.00 per hour |
| Trademark Docketing | $450.00 one-time fee per application for trademark docketing and monitoring |
| Foreign Professional Services | Cost plus 10% |

1641922 v1/NY